**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| DAVID SUSSSMAN a/k/a MARK SUSSMAN M.D. on behalf of himself and all others similarly situated, <br><br> *Plaintiff*, <br><br> *v.* <br><br><br> I.C. System, Inc. <br><br> *Defendant*. |

Civil Action 12-CV-0181


ECF CASE

---

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

---

**SCHLAM STONE & DOLAN LLP**
Jeffrey M. Eilender
Raffi Melkonian
26 Broadway
New York, New York 10004
(212) 344-5400
(telephone)
(212) 344-7677
(facsimile)

**BELLIN & ASSOCIATES LLC**
Aytan Y. Bellin, Esq.
85 Miles Avenue
White Plains,
New York 10606
(914) 358-5345
(telephone)
(212) 571-0284 (facsimile)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii-ix

PRELIMINARY STATEMENT .......................................................................... 1

BACKGROUND .................................................................................................. 4

    A.    Facts ......................................................................................................... 4

    B.    Statutory Background ............................................................................ 5

STANDARD OF REVIEW .................................................................................. 7

ARGUMENT ....................................................................................................... 10

I.    GBL 399-p IS NOT PREEMPTED BY THE TCPA ....................................... 10

    A.    The Second Circuit Has Explicitly Held That The TCPA Does Not Preempt
        More Restrictive State Telecommunications Laws ................................. 10

    B.    The Presumption Against Preemption Precludes A Finding Of Preemption In
        This Case ................................................................................................ 10

    C.    None Of The Three Standard Rubrics Under Which Preemption May Be
        Found Is Satisfied In This Case .............................................................. 13

II.    EVEN IF DEFENDANT'S PREEMPTION-BY-NEGATIVE-INFERENCE
     ARGUMENT WERE VALID, THE TCPA WOULD STILL NOT PREEMPT
     GBL 399-p ................................................................................................. 18

III.    PLAINTIFF'S FDCPA CLAIM STATES A CAUSE OF ACTION ............... 20

    A.    The Complaint States A Cause Of Action Under 15 U.S.C.§1692c(c) .......... 21

    B.    The Complaint States A Claim Under 15 U.S.C. §1692d(5) ..................... 24

    C.    The Complaint States A Cause Of Action Under 15 U.S.C. §1692d(6) .............. 26

    D.    The Complaint States A Cause Of Action Under 15 U.S.C. §1692e(2)(A) .......... 28

    E.    The Complaint States A Cause Of Action Under 15 U.S.C. §§1692e(10-11) ...... 28

    F.    The Complaint States A Cause Of Action Under 15 U.S.C. §1692f .................... 29

CONCLUSION ...................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Akalwadi v. Risk Mgmt.,*
   336 F.Supp.3d 492 (D.Md. 2004) ................................................................................24

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ..................................................................................................8

*Bank v. Cooper,*
   No. 08–CV–3936 (JBW),
   2009 WL 1491227 (E.D.N.Y. May 27, 2009) ...........................................................22

*Bates v. Dow Agrosciences, LLC,*
   544 U.S. 431, 449 (2005) ..........................................................................................11

*Bates v. I.C. System,*
   No. 09-CV-103A, 2009 WL 3459740 (W.D.N.Y. Oct. 19, 2009). .............................9

*BedRoc Ltd. v. United States,*
   541 U.S. 176 (2004) ..................................................................................................19

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................................................9

*Bishop v. I.C. System, Inc.,*
   713 F.Supp.2d 1361 (M.D. Fla. 2010) ......................................................................22

*Brodeur v. City of New York,*
   No. 99 Civ. 651, 2002 WL 424688 (S.D.N.Y. Mar. 18, 2002) ...................................9

*Brown v. Hosto & Buchan, PLLC,*
   748 F.Supp.2d 847 (W.D. Tenn. 2010)......................................................................24

*Carr v. NCO Fin. Sys., Inc.,*
   No. 11-2050, 2011 WL 6371899 (E.D. Pa. Dec. 20, 2011)........................................24

*Castro v. Collecto, Inc.,*
   634 F.3d 779 (5th Cir. 2011) .....................................................................................11

*Chamber of Commerce of U.S. v. Lockyer*,
   2006 WL 462482 (E.D. Cal. Feb. 27, 2006)................................................................17

*Chavious v. CBE Group, Inc.*,
   No. 10-CV-1293, 2012 WL 113509 (E.D.N.Y. Jan. 12, 2012) ..........................................25, 27

*Cipollone v. Liggett Grp., Inc.*,
   505 U.S. 504 (1992)..........................................................................................11

*City of Chicago v. Envtl. Def. Fund*,
   511 U.S. 328 (1994)..........................................................................................17

*Coles v. Lieberman, Michaels & Kelly*,
   No. 10-CV-484S, 2011 WL 3176467 (W.D.N.Y. July 27, 2011) ......................................26-27

*DeGeorge v. LTD Fin. Servs., L.P.*,
   No. 06–CV–178S, 2008 WL 905913 (W.D.N.Y. Mar. 31, 2008)......................................22, 24

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 .....................................................................................................9

*Drake v. Laboratory Corporation of America Holdings*,
   458 F.3d 48 (2d Cir. 2006).................................................................................2, 16

*Duffy v. Landberg*,
   215 F.3d 871 (8th Cir. 2000) ...............................................................................29

*Edwards v. Niagara Credit Solutions, Inc.*,
   586 F.Supp.2d 1346 (N.D. Ga. 2008) .....................................................................27

*English v. Gen. Elec. Co.*,
   496 U.S. 72 (1990)..............................................................................................13

*ErieNet, Inc. v. Velocity Net, Inc.*,
   156 F.3d 513 (3d Cir. 1998).................................................................................13

*Fashakin v. Nextel Comm'ns*,
   No. 05-CV-3080, 2009 WL 790350 (E.D.N.Y. Mar. 25, 2009)...........................................27

*Fields v. Wilber Law Firm, P.C.*,
    383 F.3d 562 (7th Cir. 2004) ................................................................................29

*Flagship Capital*,
    125 P.3d 894 (Utah 2005) ....................................................................................16

*FreeEats.com, Inc.*,
    712 N.W.2d at 839 ................................................................................14, 16, 19

*Freeman v. ABC Legal Servs.*,
    827 F.Supp.2d 1065 (N.D. Cal. 2011) ..................................................................29

*Ginsburg v. City of Ithaca*,
    2012 WL 858412 (N.D.N.Y. Mar. 15, 2012) ..........................................................9

*Globecon Group LLC v. Hartford Fire Ins. Co.*,
    434 F.3d 165 (2d Cir. 2006) ...................................................................................8

*Gottlieb v. Carnival Corp.*,
    367 F. Supp.2d 301 (E.D.N.Y. 2005) ....................................................................18

*Gottlieb v. Carnival*,
    436 F.3d 335 (2nd Cir. 2006) ...............................................................................18

*Gottlieb v. Carnival*,
    635 F. Supp.2d 213 (E.D.N.Y 2009) .....................................................................18

*Head v. New Mexico Board of Examiners in Optometry*,
    374 U.S. 424 (1963) .............................................................................................14

*Hellstrom v. U.S. Dep't of Veterans Affairs*,
    201 F.3d 94 (2d Cir. 2000) .....................................................................................8

*Hicks v. America's Recovery Solutions*,
    816 F.Supp.2d 509 (N.D. Ohio 2011) ..................................................................28

*Hillsborough County, Fla. V. Automated Med. Lab., Inc.*,
    471 U.S. 707 (1985) .............................................................................................16

*Holster v. GATCO*,
618 F.3d 214 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 2151 (2011) .......................................2, 10

*Hovila v. Twen Brands, Inc.*,
2010 WL 1433417 (W.D. Wash Apr. 7, 2010)...................................................................12, 19

*Hyman v. Tate*,
362 F.3d 965 (7th Cir. 2004) .......................................................................................23

*Intern'l Science & Tech.*,
106 F.3d 1146 ...........................................................................................................14

*Ishikawa v. Delta Airlines*,
343 F.3d 1129 (9th Cir. 2003) .......................................................................................17

*Jerman v. Carlisle, McNellie, Rini*,
130 S. Ct. 1605 (2010)..................................................................................................6

*Katz v. Asset Acceptance, LLC*,
2006 WL 348921 (E.D.N.Y. Nov. 30, 2006)...................................................................23

*Kerwin v. Remittance Assistance Corp.*,
449 F.Supp.2d 1117 (D. Nev. 2008).............................................................................21

*Klein v. Vision Lab Telecommunications Inc.*
399 F.Supp.2d 528 (S.D.N.Y. 2005)..............................................................................18

*Kort v. Diversified Collection Serv. Inc.*,
394 F.3d 530 (7th Cir. 2005) .......................................................................................23

*Langdon v. Credit Management, L.P.*,
No. C 09-3286, 2010 WL 3341860 (N.D. Cal. Feb. 24, 2010) ..........................................26, 28

*Leonard F. v. Israel Discount Bank of New York*,
199 F.3d 99 (2d Cir. 1999)..........................................................................................9, 17

*Mabey Bridge & Shore, Inc. v. Schoch*,
666 F.3d 862 (3d Cir. 2012)..........................................................................................11

*Madeira v. Affordable Housing Found.*,
469 F.2d 219 (2d Cir. 2006)...........................................................................................15

*Manhattan Telecom. Corp. v. Global NAPS, Inc.*,
No. 08 Civ. 3229, 2010 WL 13426095(S.D.N.Y. Mar. 31, 2010) ....................................2, 11, 15

*Marcus v. AT&T Corp.*,
138 F.3d 46 (2d Cir. 1998)........................................................................................2, 12, 15

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)........................................................................................................8

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007)............................................................................................9

*McMillan v. Collection Professional, Inc.*,
455 F.3d 754 (7th Cir. 2006) ..........................................................................................29

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996)........................................................................................................10

*Meilleur v. AT&T*,
No. C11-1025, 2011 WL 5592647 (W.D. Wash Nov. 16, 2011) ..............................................12

*Mims v. Arrow Fin'l Servs. LLC*,
132 S.Ct. 740 (2012)............................................................................................14, 17, 18

*Niagara Mohawk Power Corp. v. Hudson River*,
673 F.3d 84 (2d Cir. 2012)........................................................................................10, 13

*Norfolk & Western Ry. Co. v. American Train Dispatchers Ass'n*,
499 U.S. 117 (1991)........................................................................................................19

*Palmer v. Sprint Nextel Grp.*,
674 F.Supp.2d 1224 (W.D. Wash. 2009)............................................................................19

*Patriotic Veterans Inc. v. Zoeller*,
821 F.Supp.2d 1074 (S.D. Ind. 2011)......................................................................13, 17, 19

*Piazza v. Fl. Union Free Sch. Dist.*,
    777 F.Supp.2d 669 (S.D.N.Y. 2011) ........................................................10

*Pipiles v. Credit Bureau of Lockport*,
    886 F.2d 22 (2d Cir.1989) ........................................................................22

*Puglisi v. Debt Recovery Solutions, LLC*,
    822 F.Supp.2d 218 (E.D.N.Y. 2011) .......................................................23

*R.G Group, Inc. v. Horn & Hadart Co.*,
    751 F.2d 69 (2d Cir. 1984).........................................................................9

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979)..................................................................................19

*Riley v. Giguiere*,
    631 F.Supp.2d 1295 (E.D. Cal. 2009) ......................................................29

*Rucker v. Nationwide Credit, Inc.*,
    2011 WL 25300 (E.D. Cal. Jan. 5, 2011) .................................................27

*Russell v. Equifax A.R.S.*,
    74 F.3d 30 (2d Cir. 1996)..........................................................................28

*Sanchez v. Client Servs., Inc.*,
    520 F.Supp.2d 1149 (N.D.Cal. 2007) .......................................................24

*State ex rel. Stenehjem v. FreeEats.com*,
    712 N.W.2d 828 (N.D. 2006) ...................................................................12

*Turner v. J.V.D.B. & Assoc., Inc.*,
    330 F.3d 991 (7th Cir. 1995) ....................................................................28

*U.S. v. Dish Network, LLC*,
    667 F.Supp.2d 952 (C.D. Ill. 2009) ..........................................................19

*Udell v. Kansas Counselors, Inc.*,
    313 F.Supp.2d 1135 (D. Kan. 2004).........................................................27

*Utah Division of Consumer Prot. v. Flagship Capital,*
   125 P.3d 894 (Utah 2005) ...................................................................................13, 14

*Valentine v. Brock & Scott, PLLC,*
   No. 09-2555, 2010 WL 1727681 (D.S.C. Apr. 26, 2010) ......................................24

*Van Bergen v. State of Minn.,*
   59 F.3d 1541 (8th Cir. 1995) .........................................................................13, 15

*Wyeth v. Levine,*
   555 U.S. 555, 565 (2009) ...........................................................................................11

## RULES, STATUTES AND OTHER AUTHORITIES

Communications Act of 1934
   47 U.S.C. § 227(f)(1) ...............................................................................2, 6, 18, 19
   47 U.S.C. § 414 .............................................................................................2, 14, 15

Fair Debt Collection Practices Act ("FDCPA")
15 U.S.C.
   §1692 .....................................................................................................................4
   §1692c(c) .............................................................................................3, 6, 21, 22
   §1692d ..................................................................................................................6, 27
   §1692d(5) ...........................................................................................3, 7, 24, 25
   §1692d(6) ...................................................................................3, 7, 26, 27, 28
   §1692e(2) ...............................................................................................................6, 7
   §1692e(2)(A) .......................................................................................................3, 7, 28
   §1692e(10) .........................................................................................3, 7,  28, 29
   §1692e(11) ...........................................................................................3, 7, 28, 29
   §1692f ...............................................................................................................3, 7, 29
   §1692k(c) .............................................................................................................22

28 U.S.C.
   § 1331 ...................................................................................................................18

Federal Rules of Civil Procedure
   Rule 12(b)(6) .......................................................................................................1, 9
   Rule 56 ..................................................................................................................1, 7
   Rule 56(d) .............................................................................................................8

Federal Aviation Act ...................................................................................................16

New York General Business Law ("GBL"
    § 396-aa.............................................................................................................18
    § 396-p ......................................................................................................15, 20
    § 399-p ........................................................................................................*passim*
    § 399-p(1)............................................................................................................5
    § 399-p(1)(a) ......................................................................................................5
    § 399(p)(2)....................................................................................................19, 20
    § 399-p(3).........................................................................................................1, 5
    § 414.................................................................................................................15

*In re Rules and Reg. Implementing the Tel. Consumer Prot. Act of 1991, Report and Order,*
    18 FCC Red 14014, 14060,62 (2003) ...................................................................12

Telephone Consumer Protection Act ("TCPA")
    47 U.S.C. § 227...............................................................................................1, 6

Plaintiff David Sussman ("Plaintiff"), individually and on behalf of all others similarly situated, by his undersigned counsel, respectfully submits this Memorandum of Law, together with the Declaration of Aytan Y. Bellin ("Bellin Aff."), and Plaintiff's response to Defendant's Rule 56.1 statement in opposition to Defendant I.C. System Inc.'s ("Defendant") motion for an order pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure dismissing the Complaint[1] and/or granting the defendant summary judgment.[2]

## **PRELIMINARY STATEMENT**

This case concerns, among other things, over 50 automated telephone calls Defendant made to Plaintiff's residence in an attempt to collect an alleged debt that Defendant did not owe. These calls violated N.Y. GBL ("GBL") § 399-p(3) because they did not "state at the beginning of the call the nature of the call and the name of the person or on whose behalf the message is being transmitted and at the end of such message the address, and telephone number of the person on whose behalf the message is transmitted."  GBL § 399-p(3).  These calls also violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), which, among other things, require debt collectors to identify themselves in debt collection calls, not to harass alleged debtors through repeatedly making the debtor's telephone ring, not to use false or deceptive means to collect an alleged debt and not to continue to attempt to collect an alleged debt after the alleged debtor notifies them that he contests the debt.

Defendant does not deny that its calls violated GBL § 399-p(3), but contends that GBL § 399-p is preempted by the Telephone Consumer Protection Act ("TCPA") (47 U.S.C. § 227) which also regulates automated telephone calls and supposedly does not prohibit the calls at issue here.   In making its preemption argument, Defendant does not utilize any of the three

---

[1] A copy of the Plaintiff's Complaint, filed on January 10, 2012, ("Complaint" or "Compl") is annexed to the Affirmation of Kenneth A. Elan, accompanying Defendant's motion to dismiss, as Exhibit A.
[2] As set forth below, to the extent Defendant seeks summary judgment, that motion is procedurally inappropriate on its face.

established preemption rubrics, i.e., express preemption, field preemption, or conflict preemption.  Nor could Defendant utilize any of them because GBL § 399-p(3) is not preempted under any of them.  Rather, Defendant asserts that because the TCPA's preemption savings clause, 47 U.S.C. § 227(f)(1), allegedly does not cover statutes such as GBL § 399-p, GBL § 399-p must be preempted.  In other words, Defendant deduces the preemption of GBL § 399-p by the TCPA's preemption savings clause through a negative inference.

Defendant's preemption arguments fail because the Second Circuit has explicitly held that the TCPA does not preempt stricter state telecommunication laws.  *See Holster v. GATCO*, 618 F.3d 214, 218 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 2151 (2011).  If that were not enough, Defendant's preemption argument also fails because the Second Circuit has explicitly rejected the notion that a federal statute preempts state law simply because the federal statute's preemption savings clause does not cover the state statute.  *See Drake v. Laboratory Corporation of America Holdings*, 458 F.3d 48, 62 (2d Cir. 2006).  Finally, the savings clause of the Communications act of 1934 (47 U.S.C. § 414) — which states that "nothing in this chapter [of which the TCPA is a part] shall abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies" — also precludes a finding of preemption here.  *See Drake*, 458 F.3d at 58 (savings clause precludes a finding of preemption); *Marcus v. v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998) (holding that 47 U.S.C. § 414 manifests an intent by Congress that state law claims not be preempted by the Communications Act of 1934); *Manhattan Telecom. Corp. v. Global NAPS, Inc.*, No. 08 Civ. 3229, 2010 WL 13426095, *3 (S.D.N.Y. Mar. 31, 2010) (same).

In any event, even if Defendant's preemption by negative inference argument were cognizable, it would be of no avail.  That is because, contrary to Defendant's assertions, GBL § 399-p is squarely covered by the TCPA's preemption saving's clause.

2

Defendant's arguments in support of dismissal and/or summary judgment on Plaintiff's FDCPA claims do not fare any better.  Each of Plaintiff's claims under the FDCPA states a cause of action.    First, Defendant violated §1692c(c) by failing to stop harassing Plaintiff after Plaintiff informed Defendant in writing that he disputed the alleged debt at issue.  Defendant's attempt to invoke the bona fide error defense to stave off liability under this section fails: rather than being the sort of accidental mistake that might invoke that defense, Defendant's cease and desist procedure—which even in Defendant's own telling builds in a substantial lag between the time a consumer provides written notice and the time the harassment stops—is itself a violation of the statute.  Second, Defendant violated §1692d(5)—the provision prohibiting calls made with "intent to annoy, abuse, or harass"—by placing over 50 calls to Plaintiff's residential telephone lines without Plaintiff's consent in the space of approximately 20 days.  Third, the Complaint alleges a valid cause of action under §1692d(6) because Defendant failed to disclose its identity during the (at minimum) 50 calls it made to Plaintiff's residence.  Fourth, Defendant violated §1692e(2)(A) by seeking to recover a debt that did not exist, therefore making false representations as to the "character, amount or legal status of any debt."  Fifth, the Complaint states a cause of action under §1692e(10)—which prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt—because Defendant failed to leave voicemails or identify itself when Defendant's debt collection calls were answered. Sixth, the Complaint states a cause of action under §1692e(11)—which prohibits requires disclosure that the caller is a debt collector is seeking to collect debts—for the same reasons that the Complaint states a claim under §1692e(10).  Finally, the Complaint states a cause of action under §1692f, which prohibits the use of unfair or unconscionable means to collect or attempt to collect a debt— because it alleges that Defendant hung up when members of the Plaintiff's household

answered, that Defendant made over 50 calls in a space of 20 days to Plaintiff and that Defendant sought to recover a debt that was not owed.

Defendant's main argument, that this Court should grant "summary judgment" on Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA") is procedurally infirm on its face. Summary judgment is not appropriate before discovery. Under the proper motion to dismiss standard, the Plaintiff's Complaint (the "Complaint") easily states claims under multiple provisions of the FDCPA. Nor can Defendant avail itself of the statutory "bona fide error" defense as it claims. To the contrary, the applicability of that defense is fact-bound. It is therefore unavailable at this preliminary stage of the litigation. In short, Defendant's motion should be denied in its entirety.

## **BACKGROUND**

### A. **Facts**

Plaintiff, David Sussman, is a citizen of New York State and resides in Monsey, New York. Compl. ¶9. Defendant is a debt collector within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq. Compl. ¶12. This is a class action arising out of Defendant's violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §1692 et seq. and New York General Business Law ("GBL") §399-p. In short, from on or about October 1, 2011 to January 10, 2012, in an attempt to collect a debt for service on a home telephone which Plaintiff did not owe, Defendant, using an automatic dialing-announcing device, made at least 50 calls to Plaintiff's residential telephone lines without Plaintiff's consent. These calls have caused Plaintiff's telephone to ring. Compl. ¶19.

Rather than provide the information required by the GBL § 399-p and the FDCPA, however, Defendant's calls terminated either prior to or as soon as Plaintiff, someone in Plaintiff's household or Plaintiff's voice mail answered the call. Compl. ¶19. In making these

calls, Defendant failed to identify the person on whose behalf the calls were being made and the address and the telephone number of the person on whose behalf the calls were made.  Compl. ¶20.  Further, Plaintiff informed Defendant in writing on November 4, 2011, that Plaintiff did not owe any of the alleged debt and instructed Defendant to stop harassing Plaintiff.  Compl. ¶21.  However, Defendant's illegal calls continued after that communication.  Compl. ¶21.

Plaintiff seeks to represent two classes of individuals defined as follows:

Class A: All persons in New York State from three years prior to the filing of the Complaint to January 12, 2012 to whom, Defendant, using an automatic dialing-announcing device as defined in GBL 399-p(1)(a) placed calls, in which Defendant hung up either prior to or as soon as the phone was picked by a person or voice mail/answering machine and/or in which Defendant otherwise did not communicate the address of the persons on whose behalf the calls were made.

Class B: All persons in New York State to whom Defendant, in attempts to collect consumer debts, placed of calls in which Defendant hung up either prior to or as soon as the phone was picked up by a person or voice mail/answering machine. Compl. ¶25.

## B.  **Statutory Background**

GBL §399-p prohibits certain telemarketing practices, and specifically the use of automatic-dialing announcing devices, except under certain circumstances.  An "automatic dialing-announcing device" is defined as "any automatic equipment which incorporates a storage capability of telephone numbers to be called and is used, working alone or in conjunction with other equipment, to disseminate a prerecorded message to the telephone number calls without the use of an operator." Specifically, GBL §399-p(3) provides that:

3. Whenever telephone calls are placed through the use of an automatic dialing-announcing device, such device shall do all of the following:

(a) state at the beginning of the call the nature of the call and the name of the person or on whose behalf the message is being transmitted and at the end of such message the address, and telephone number of the person on whose behalf the message is transmitted, provided such disclosures are not otherwise prohibited or restricted by any federal, state or local law; and

(b) disconnect the automatic dialing-announcing device from the telephone line upon the termination of the call by either the person calling or the person called.

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 is a federal statute that also protects persons from unsolicited automated telephone calls.   The TCPA has no preemption clause.   Rather, as relevant here, the only reference to preemption in the TCPA is the savings clause, 47 U.S.C. §227(f)(1) et seq. which is entitled "State laws not Preempted" and provides as follows:

> Except for the standards prescribed under subsection (d) of this section and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits—
>
> > **(A)** the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;
> > **(B)** the use of automatic telephone dialing systems;
> > **(C)** the use of artificial or prerecorded voice messages; or
> > **(D)** the making of telephone solicitations.

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(2) et seq. imposes civil liability on "debt collector[s] for certain prohibited debt collection practices.  *See Jerman v. Carlisle, McNellie, Rini*, 130 S. Ct. 1605, 1608 (2010).   The statute was enacted in 1977 to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers. *Id.*   The statute seeks to achieve those goals through a variety of measures.   The following provisions of the FDCPA are relevant here:

- 15 U.S.C. § 1692c(c): "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the customer, the debt collector shall not communicate further with the consumer".

- 15 U.S.C. § 1692d: Provides that a debt collector may not "engage in any conduct the natural consequence of which is to harass, oppress or abuse any person in collection with the collection of a debt." The statute provides that such conduct includes "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number", §1692d(5), and "the placement of telephone calls without meaningful disclosure of the caller's identity." §1692d(6).

- 15 U.S.C. § 1692e(2): Provides that a debt collector may not use any "false, deceptive or misleading representation or means in connection with the collection of any debt."

- 15 U.S.C. § 1692e(2)(A): Provides that a false representation of "the character, amount or legal status of any debt" is a false, deceptive or misleading representation under 15 U.S.C. § 1692e(2).

- 15 U.S.C. § 1692e(10): Prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt."

- 15 U.S.C. § 1692e(11): Provides that "[t]he failure to disclose in the initial written communication with the consumer, and in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector" violates the FDCPA.

- 15 U.S.C. § 1692f: The FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect a debt."

## **STANDARD OF REVIEW**

Defendant alternatively styles its motion as a motion to dismiss (on the cover page of its brief) and a motion for summary judgment (in its statement of facts and discussion of the standard of review, and *passim* throughout the brief). To the extent that Defendant seeks summary judgment under Fed. R. Civ. P. 56, such relief is premature and therefore entirely inappropriate. Most obviously, this Court, in response to Defendant's letter asking permission to file a motion for summary judgment, specifically permitted only a motion to dismiss, staying all discovery other than document requests until the resolution of the dispositive motion. Moreover,

in the Civil Case Management Plan this Court so-ordered on April 10, 2012, the parties agreed that any summary judgment motions would be "post-discovery." *See* Docket #9, at ¶8. Defendant specifically explained that it anticipated making a pre-discovery motion to dismiss stating that "the complaint fails to state a cause of action". *Id.* at ¶3. Thus, purely as a procedural matter, summary judgment is completely inappropriate here.[3]

Further, it is beyond dispute—and indeed Defendant does not dispute— that before a court grants summary judgment, the non-movant "must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (internal quotations omitted). Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery. *Id.* (citations omitted). Although Plaintiff has served numerous discovery requests on Defendant which go directly to material questions of fact, those requests have thus far gone unanswered. Thus, any notion that this case can be disposed of at this stage as a matter of summary judgment is highly improper.

The cases Defendant purports to cite in the "Standard of Review" section of its brief only prove the point that Defendant's so-called "summary judgment" motion is improper. Each of those cases applied summary judgment review only after substantial discovery. *See Globecon Group LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 168 (2d Cir. 2006) (citing deposition testimony and various emails); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (applying summary judgment standard only "after several years of discovery");

---

[3] Defendant's summary judgment motion should also be rejected under Fed. R. Civ. P. 56(d), which permits the Court to deny or defer a motion for summary judgment if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition. As set forth in the Declaration of Aytan Y. Bellin attached hereto, Plaintiff seeks facts through discovery that would show material issues of disputed fact. *See* Bellin Aff. ¶11. Plaintiff cannot currently present those facts because they are exclusively in the possession of Defendant. At a minimum, to the extent Defendant seeks summary judgment, its motion should be denied or deferred for that reason too.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (holding that a plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment where "plaintiff has had a full opportunity to conduct discovery"); *R.G Grp., Inc. v. Horn & Hadart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) ("If after pretrial discovery the court is convinced as a matter of law that a suit can only have on possible outcome, summary judgment must be granted").[4]

Thus, the only proper standard of review here is that of a motion to dismiss.  To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In analyzing the complaint, the court must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111.  As a New York district court has observed in considering a motion to dismiss against this very defendant, "this is a motion to dismiss, not a motion for summary judgment . . . Because the Court must presume [the plaintiff's allegations] to be true at this juncture, and because the complaint cites a cognizable cause of action under the TCPA, the defendant's motion to dismiss the plaintiff's second cause of action is denied."  *Bates v. I.C. System*, No. 09-CV-103A, 2009 WL 3459740, at *2 (W.D.N.Y. Oct. 19, 2009).   A court's review of a complaint in the context of a motion to dismiss is limited to the facts as "asserted within the four corners of the complaint,

---

[4] It would be inappropriate to convert Defendant's motion to dismiss into a motion for summary judgment.  As the Second Circuit and other courts have repeatedly held, such conversions are not proper where the plaintiff has not had an opportunity to conduct "appropriate discovery."  *See Leonard F. v. Israel Discount Bank*, 199 F.3d 99, 107 (2d Cir. 1999) (reversing judgment for inappropriate conversion into summary judgment); *Ginsburg v. City of Ithaca*, 2012 WL 858412 (N.D.N.Y. Mar. 15, 2012) ("As this action was filed less than four months ago and meaningful discovery has not yet taken place, the defendants' requests to convert the motions into summary judgment motions will be denied); *Brodeur v. City of New York*, No. 99 Civ. 651, 2002 WL 424688, at *2 (S.D.N.Y. Mar. 18, 2002) (declining to convert motion to dismiss into motion for summary judgment were discovery was not complete).

the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 192 (2d Cir. 2007). Thus, documents introduced by Defendant in opposition to the Complaint may not to be considered.

## ARGUMENT

### I.  GBL 399-p IS NOT PREEMPTED BY THE TCPA

#### A.  The Second Circuit has Explicitly Held That The TCPA does not Preempt More Restrictive State Telecommunications Laws

Defendants' argument that the TCPA preempts GBL 399-p is baseless. The Second Circuit has specifically ruled that the TCPA does not preempt more restrictive state telecommunication laws. *See Holster*, 618 F.3d at 218 (the TCPA "expressly declined to preempt state regulations that were more restrictive of telemarketing than the minimal federal requirements of the statute."). The only response that Defendant has to the Second Circuit's clear holding in *Holster* is that the Second Circuit committed "error." (Br. at 15). Of course, that argument is of no help to Defendant because it is well settled that a district court in the Second Circuit "is bound by existing Second Circuit precedent unless and until that precedent is overruled." *Piazza v. Fl. Union Free Sch. Dist.*, 777 F.Supp.2d 669, 680 n.7 (S.D.N.Y. 2011). Accordingly, Defendant's preemption argument must be rejected

#### B.  The Presumption Against Preemption Precludes A Finding of Preemption In Ihis Case

Even if Defendant's preemption argument were not precluded by *Holster*, the argument would still fail. Because the "States are independent sovereigns in the federal system", *see Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996), there is a "strong presumption against finding [a state's] powers are federally preempted." *Niagara Mohawk Power Corp. v. Hudson River*,

673 F.3d 84, 95 (2d Cir. 2012).  That presumption means that a court considering whether Federal law preempts a state law must "beg[in] with the assumption that the historic police powers of the States are not to be superseded" by federal law "unless that is the clear and manifest purpose of Congress."  *Id.* at 95. *Accord Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) ("Consideration of issues arising under the Supremacy Clause start[s] with the assumption that the historic police powers of the States [are] not to be superseded by Federal Act unless that [is] the clear and manifest purpose of Congress.") In short, if there is any ambiguity in the preemption analysis, then there can be no preemption of state law.  *See Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 449 (2005) ("Even if Dow had offered us a plausible alternative reading [of the statute]—indeed, even if its alternative were just as plausible as our reading of that text—we would nevertheless have a duty to accept the reading that disfavors pre-emption"); *Mabey Bridge & Shore, Inc. v. Schoch*, 666 F.3d 862, 871 (3d Cir. 2012) ("An ambiguous regulatory scheme, however, cannot demonstrate the clear congressional intent necessary to establish preemption of state law"); *Castro v. Collecto, Inc.* 634 F.3d 779, 787 (5th Cir. 2011) ("Because we conclude that the meaning of 'lawful charges' is ambiguous, we therefore decline to interpret the term in such a way that conflict preemption would apply").

Defendant's notion that the presumption against preemption does not apply to GBL 399-p because this case involves interstate telecommunications that are regulated by the federal government is incorrect.  In *Wyeth v. Levine*, 555 U.S. 555, 565 (2009), the Supreme Court held that the presumption against preemption applied to state drug labeling laws, even though the Federal government had long regulated that field:

> Wyeth argues that the presumption against pre-emption should not apply to this case because the Federal Government has regulated drug labeling for more than a century.  That argument misunderstands the principle: We rely on the presumption because respect for the States as independent sovereigns in our federal systems leads us to assume that Congress does not cavalierly pre-empt

11

state-law causes of action.  **The presumption thus accounts for the historic presence of state law but does not rely on the absence of federal regulation**. *Id.* at n3. (emphasis added).

The Second Circuit itself has clearly indicated that state regulation of interstate telecommunications is not preempted by federal law and is properly performed by states.  *See Marcus*, 138 F.3d at 54 (holding that federal law "does not completely preempt federal state law claims in the area of interstate telecommunications" because federal law "does not manifest a clear Congressional intent to [do so]."); *Manhattan Telecom.*, 2010 WL 13426095 at *3. Consistent with the Second Circuit's opinion in *Marcus*, virtually all courts to have ruled on the question have held that the presumption against preemption applies with respect to the TCPA. *Meilleur v. AT&T*, No. C11-1025, 2011 WL 5592647 (W.D. Wash Nov. 16, 2011) (citing *Wyeth* to find that the "presumption against preemption" applies to the TCPA with respect to Washington State's equivalent to GBL 399-p); *Hovila v. Twen Brands, Inc.*, 2010 WL 1433417 (W.D. Wash Apr. 7, 2010) (applying the presumption against preemption with respect to the TCPA, and noting that the "the case for federal pre-emption is particularly weak where [as here] Congress has indicated its awareness of the operation of state law and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them.").  Rather, the intention of Congress in enacting the TCPA was to concurrently regulate the telecommunications marketplace with the states, which had legislated regarding calls by automatic dialers before the federal government ever did. *See, e.g., In re Rules and Reg. Implementing the Tel. Consumer Prot. Act of 1991, Report and Order*, 18 FCC Red 14014, 14060,62 (2003) (Noting that the "states have a long history of regulating telemarketing practices" and that "states have historically enforced their own state statutes within as well as across state lines.").  Accordingly, the TCPA does not preempt GBL 399-p. *See State ex rel. Stenehjem v. FreeEats.com*, 712 N.W.2d 828, 836 (N.D. 2006) (Recognizing that the power "to enact laws regulating or

12

prohibiting interstate telemarketing practices" is part of the long-recognized police power of the state to "protect the privacy of its citizens, including the authority to protect the peaceful enjoyment of the home and the well-being and tranquility of the community.").[5]

## C. None Of The Standard Rubrics Under Which Preemption May Be Found Is Satisfied In This Case

The Supreme Court has long held that there are three ways that federal law can be found to preempt state law: (a) express preemption, where the words of the federal statute explicitly preempt state law; (b) field preemption, "where Congress has manifested an intent to 'occupy the field' in a certain area . . . and (c) conflict preemption, where state law 'actually conflicts with federal law', including where 'it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Niagara Mohawk* 673 F.3d at 95, *citing English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990).  With respect to all three preemption rubrics, "[t]he key to the preemption inquiry is the intent of Congress, and "Congress may manifest its intent to preempt state or local law explicitly, through the express language of a federal statute, or implicitly, through the scope, structure, and purpose of the federal law." *Id.* at 95

Defendant here cannot satisfy any of the above-described preemption tests.  Defendant correctly concedes that the TCPA does not expressly preempt anything. Br. at 11 (citing *Patriotic Veterans* court's conclusion that "[t]he TCPA does not contain an express preemption clause").  Nor does Defendant assert, nor could it, that Congress has occupied the field of telecommunications regulations or that the TCPA and GBL 399-p conflict such that adherence to both is impossible.

---

[5] *See also Utah Division of Consumer Prot. v. Flagship Capital*, 125 P.3d 894, 900 (Utah 2005) (recognizing regulation of telemarketing as one of the traditional police powers of the state).

In any event, it would make no difference if Defendant had actually tried to fit this case into an established theory of preemption, because none are applicable.  Again, there is simply no express statutory preemption language in the TCPA.  It is equally clear, as every appellate court to have considered the issue has agreed, that the TCPA does not and was not intended to "occupy the field" of telecommunications regulations.  *See, e.g., Van Bergen v. State of Minn.*, 59 F.3d 1541, 1548 (8th Cir. 1995) ("[t]he TCPA carries no implication that Congress intended to preempt state law . . . if Congress intended to preempt other state laws, that intent could easily have been expressed as part of the [savings clause].");  *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 515 (3d Cir. 1998) (the TCPA "does not reflect an attempt by Congress to occupy this field of interstate communication"), *overruled on other grounds by Mims v. Arrow Fin'l Servs., LLC*, 132 S.Ct. 740 (2012); *FreeEats.com, Inc.*, 712 N.W.2d at 839 ("The statutory language of the TCPA clearly expresses the intent of Congress that the TCPA was not meant to wholly occupy the field within its subject matter, and was not intended to preempt all state law affecting the same subject. We conclude there is no field preemption in this case."); *Utah Div. of Consumer Prot.*, 125 P.3d at 901 (concluding that the "TCPA does not preempt the Utah laws either expressly or impliedly"); *Intern'l Science & Tech.*, 106 F.3d 1146, 1153 ("In any event, International Science's preemption argument must be rejected at its beginning because Congress stated that state law is not preempted by the TCPA").

In addition, the FCA's savings clause, 47 U.S.C.A. § 414, negates Congressional intent to preempt an application of state anti-telemarketing laws to interstate calls.  47 U.S.C.A. § 414 states that "nothing in this chapter [of which the TCPA is a part] shall abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."  This savings clause was recognized by the U.S. Supreme Court in *Head v. New Mexico Board of Examiners in Optometry*, 374 U.S. 424 (1963), in which Justice

14

Brennan, in his concurring opinion, citing 47 U.S.C.A. § 414 stated: "Rather than mandate ouster of state regulations, several provisions of the Communications Act suggest a congressional design to leave standing various forms of state regulations…"  Justice Brennan continued, "[o]f course such a general provision does not resolve specific problems, but its inclusion in the statute plainly is inconsistent with congressional displacement of the state statute unless a finding of that meaning is unavoidable." *Id*. at 374 U.S. 444.

The Second Circuit applied 47 U.S.C.A. § 414 in *Marcus*, 138 F.3d at 54, stating: "[T]he FCA not only does not manifest a clear Congressional intent to preempt state law actions prohibiting deceptive business practices, false advertisement, or common law fraud, it evidences Congress's intent to allow such claims to proceed under state law."  Therefore, it is abundantly clear that the language of § 414 of the FCA evidences Congressional intent that the TCPA and the FCA should not be interpreted as displacing the interstate application of state laws, such as GBL § 396-p, unless such Congressional intent is explicitly manifested in the statute. *See Manhattan Telecom.* 2010 WL 1326095 at *3 (FCA did not create preemption).

Nor is there a basis for this court to find conflict preemption.  As the Second Circuit has held, "the principle is thoroughly established that the exercise by the state of its police power, which would be valid if not superseded by federal action, is superseded only where the repugnance or conflict [between state and federal law] is so direct and positive that the two acts cannot be reconciled or consistently stand together."  *Madeira v. Affordable Housing Found.*, 469 F.2d 219, 241 (2d Cir. 2006).  There is no reason here—and Defendant does not point to one—that Defendant could not comply with both New York and Federal law.  *See Marcus*, 138 F.3d at 54 (telecommunications not a "*uniquely* federal interest") (emphasis in original).

Indeed, numerous courts have held that the TCPA does not conflict with state law.  *See Van Bergen*, 59 F.3d at 1548 ("[T]he preemption provision makes it clear that Congress did not

intend . . . to promote national uniformity of ADAD regulation."); *FreeEats.com*, 712 N.W.2d at

839 (rejecting conflict preemption theory with respect to North Dakota law, because there has

been no showing that "a telemarketer's compliance with the prohibitions in [North Dakota law]

would place it in direct noncompliance with the TCPA.").   To the contrary, "[S]tates are

generally free to complement federal law by identifying additional local needs and imposing

further regulations." *FreeEats*, 712 N.W.2d at 840, *citing Hillsborough County, Fla. V.

Automated Med. Lab., Inc.*, 471 U.S. 707 (1985) ("observing that "[t]he subjects of modern

social and regulatory legislation often by their very nature require intricate and complex

responses from the Congress, but without Congress necessarily intending its enactment as the

exclusive means of meeting the problem"); *Flagship Capital*, 125 P.3d 894, 900 (Utah 2005)

(finding that there is "no reason why telemarketing companies would be unable to comply with

both the Utah laws and the federal statutes").

Defendant's only resort is to the novel claim that the TCPA preempts state law through a

negative inference from the TCPA's savings clause: that is, because the TCPA expressly states

that certain types of state laws are not preempted, Congress must have meant to preempt all other

state laws.  That argument turns the strong presumption against preemption on its head.  More to

the point, the Second Circuit has expressly rejected exactly this argument in a different (but

analogous) context.  In *Drake*, 458 F.3d at 48, defendants argued that "the savings clause of the

[Federal Aviation Act] regulations, which provides that some state criminal statutes are not

preempted . . . implies that state law claims are otherwise broadly preempted."  *Id.* at 62.  The

court rejected that argument, holding that the savings clause of the FAA regulations did not

"carr[y] a negative pregnant that other state law is preempted".  *Id.*  In addition, as the Ninth

Circuit held in a case upon which the Second Circuit panel in *Drake* relied, the reason that a

preemption by a negative inference from a savings clause argument cannot stand is "because of

16

the presumption against preemption." *Ishikawa v. Delta Airlines*, 343 F.3d 1129, 1132 (9th Cir. 2003).

The only case that supports Defendant's preemption argument, *Patriotic Veterans Inc. v. Zoeller*, 821 F.Supp.2d 1074 (S.D. Ind. 2011), was wrongly decided and is currently on appeal and *sub judice* before a panel of the Seventh Circuit. *Patriotic Veterans* fails to grapple with the strong presumption against preemption, does not cite a single case for its theory that long-standing state statutes can be overturned by negative inferences, and is in any event contrary to the Second Circuit's opinion in *Drake*.    Accordingly, *Patriotic Veterans* may not be followed by this Court.[6]

Defendant also points to some isolated comments in the TCPA's legislative history as support for its position that the TCPA preempts GBL 399-p.  Specifically, Defendant references the statement of Senator Hollings, the bill's co-sponsor, who said that "[p]ursuant to the general preemptive effect of the Communications Act of 1934, State regulation of interstate communications, including interstate communications initiated for telemarketing purposes, is preempted." However, the Supreme Court has recently rejected any reliance on Senator Hollings' statements in interpreting the meaning of the TCPA.  *See Mims v. Arrow Fin'l Servs. LLC*, 132 S.Ct. 740, 752 (2012).  That is because "the views of a single legislator, even a bill's sponsor, are not controlling." *Id.   Accord Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 105 (2d Cir. 1999)*, quoting City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 337 (1994).  ("Legislative History cannot trump the plain meaning of a statute, because 'it is the statute, and not the Committee Report, which is the authoritative expression of the law'").

---

[6] The only other case which has held any state law preempted by the TCPA is *Chamber of Commerce of U.S. v. Lockyer*, 2006 WL 462482 (E.D. Cal. Feb. 27, 2006), and that case  is wrong for the same reasons that *Patriotic Veterans i*s wrong.

Because of that rule, the Supreme Court explicitly refused to allow Senator Hollings' statements in the TCPA's legislative history to overcome the presumption that federal courts have jurisdiction under 28 U.S.C. 1331 over causes of action created by federal law. See *Mims*, 132 S. Ct. at 752. Similarly, here, Senator Hollings' statements cannot overcome the strong presumption against preemption and the savings clause of the Communications Act of 1934. Even if Senator Hollings' statements could be interpreted to reflect the understanding of most of the members of Congress, which they cannot, that would still be insufficient to overcome the strong presumption against preemption and the Communications Act's savings clause. *See id.* (holding that "even if we agreed with [the defendant] that Senator Hollings expected private TCPA actions to proceed solely in state courts, and even if other supporters shared that view, that would not control our judgment on 28 U.S.C, § 1331's compass.").[7] Accordingly, Defendant's argument that through a negative inference from the TCPA's savings clause, the TCPA preempts GBL 399-p, is without merit and should be rejected.

## II.   EVEN IF DEFENDANT'S PREEMPTION-BY-NEGATIVE-INFERENCE ARGUMENT WERE VALID, THE TCPA WOULD STILL NOT PREEMPT GBL 399-p.

---

[7] *Klein v. Vision Lab Telecommunications Inc.* 399 F.Supp.2d 528 (S.D.N.Y. 2005), relied on by Defendant in support of its preemption argument, is inapposite. *Klein* had nothing to do with preemption. Rather, *Klein*, held that GBL 396-aa — a statute which is not even at issue here — did not cover interstate faxes. *Id.* at 541. To reach that conclusion, *Klein* relied on Judge Glasser's opinion in *Gottlieb v. Carnival Corp.*, 367 F. Supp.2d 301 (E.D.N.Y. 2005). *See Klein*, 399 F.Supp.2d at 542. However, the *Gottlieb* opinion was subsequently vacated by the Second Circuit which rejected Judge Glasser's (and therefore *Klein*'s) conclusion that GBL 396-aa did not cover interstate faxes. *See Gottlieb v. Carnival*, 436 F.3d 335, 344 (2nd Cir. 2006) ("We take no position on *Gottlieb's* state law claim other than to note that New York's statute does not, on its face, limit itself in the way the District Court, relying on the purpose of the TCPA, as expressed in the statute's legislative history, suggested"). Significantly, on remand, Judge Glasser found that GBL § 396-aa reached interstate faxes and that the TCPA did not preempt GBL 396-aa. *Gottlieb v. Carnival*, 635 F. Supp.2d 213, 223-226 (E.D.N.Y 2009). Thus, *Klein* is not good law and is, in any event, irrelevant.

Even if Defendant's preemption-by-negative-inference argument were valid, the TCPA would still not preempt GBL 399-p.  That is because Section 227(f)(1) states that "nothing in this section . . . shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits . . . the use of automatic telephone dialing systems."  As is well established, the word "or" is disjunctive in nature and ordinarily indicates an alternative between different things or actions.  *See, e.g., Reiter v. Sonotone Corp.*, 442 U.S. 330, 338-39 (1979). The plain reading of this statute is that—at the very least—it permits **prohibitions** of both intrastate and interstate use of auto-dialers. *See, e.g., FreeEats.com* 712 N.W.2d at 831 (The savings clause, "read logically and grammatically . . . states that nothing in the TCPA preempts any state which prohibits calls within the enumerated list. . . .The word 'intrastate . . . unambiguously modifies only the first clause."); *Hovila*, 2010 WL 1433417 at *7 ("a majority of the courts has [sic] read the word 'intrastate' to modify only 'requirements' and 'regulations'") (collecting cases). [8]

In the instant case, GBL 399-p is best understood as a "prohibition" of telemarketing practices.  Its operative section unambiguously prohibits automatic dialing-announcing calls,

---

[8] *Patriotic Veterans*' rejection of the plain meaning of the TCPA's preemption savings because that interpretation allegedly is "awkward" is simply wrong and has been rejected by other courts. *See FreeEats.com* 712 N.W.2d at 831 (The savings clause, "read logically and grammatically . . . states that nothing in the TCPA preempts any state which prohibits calls within the enumerated list. . . .The word 'intrastate . . . unambiguously modifies only the first clause."); *Palmer v. Sprint Nextel Grp.*, 674 F.Supp.2d 1224, 1227 (W.D. Wash. 2009) (rejecting the reading of the savings clause set forth in the *Lockyer* case and in *Patriotic Veterans*); *U.S. v. Dish Network, LLC*, 667 F.Supp.2d 952, 964 (C.D. Ill. 2009) (calling Defendant's proposed reading a "misreading of the section").  That is because the plain meaning rule, which is the "preeminent canon of statutory interpretation" requires that courts "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004).  Courts are not permitted to depart from the unambiguous text of a statute simply because the result is inconvenient or the grammar different than how the court would draft it. *See Norfolk & Western Ry. Co. v. American Train Dispatchers Ass'n*, 499 U.S. 117 (1991) (the courts and administrative agencies must give effect to the unambiguously expressed intent of Congress).

19

subject to a few exceptions: "No person shall operate an automatic dialing-announcing device, nor place any consumer telephone call, except in accordance with the provisions of this section." *See* GBL-399(p)(2).  The North Dakota law upheld in *FreeEats.com* case is again instructive. There, the North Dakota Supreme Court was confronted with a law that stated that "a caller **may not** use or connect to a telephone line an automatic dialing-announcing device" subject to certain exceptions.  *See* 712 N.W.2d at 832 (emphasis added).  That court held the North Dakota law to be a prohibition of "certain interstate marketing calls" because it prohibited calls except in certain enumerated instances.  *Id.* at 840. *See also Hovila*, 2010 WL 1433417 at *2 (reading Washington state law as enacting a "prohibition" on telephone calls subject to various exemptions). Accordingly, even under Defendant's theory of preemption-by-negative inference from a savings clause, the TCPA would not preempt GBL § 399-p because GBL § 399-p  is covered by the TCPA's preemption savings clause.

*          *          *

In sum, the TCPA does not preempt GBL § 399-p.  Accordingly, Defendant's motion to dismiss Plaintiff's GBL § 396-p claims should be rejected.

## III.   <u>PLAINTIFF'S FDCPA CLAIM STATES A CAUSE OF ACTION</u>

The Complaint's FDCPA claims state a cause of action under each provision of the FDCPA invoked by the Complaint.  Defendant argues that this Court should grant "summary judgment" to Defendant on Plaintiff's FDCPA for three purportedly independent reasons: (a) because the allegations of the Complaint do not rise to the level of an FDCPA claim, particularly with respect to the number and pattern of the calls made to Plaintiff; (b) because Defendant's failure to comply with the FDCPA information requirements is not a violation of the FDCPA; and (c) because Defendant's continued harassing calls to Plaintiff after Plaintiff instructed

20

Defendant in writing to stop its harassment was the result of a bona-fide error and not actionable. Defendant's motion is fundamentally misconceived. Summary judgment is simply inappropriate in these circumstances. Defendant has not yet responded to Plaintiff's numerous discovery requests and there have been no depositions. All the information that would prove Plaintiff's allegations —and particularly the records of Defendant's debt collection practices, its pattern and frequency of calls to Plaintiff and to other class members, and the facts surrounding Defendant's failure to stop harassing Plaintiff after Plaintiff instructed Defendant to cease and desist—are in Defendant's sole possession. To claim that this court (and Plaintiff) must accept the version of the facts propounded in Defendant's self-serving affidavit and statement of undisputed facts is to put the cart before the horse.[9]   Under the proper motion to dismiss standard of review—which Defendant does not even invoke or mention anywhere in its brief—it is plain that this Complaint states a cause of action.

**A.      The Complaint States a Cause of Action under 15 U.S.C. §1692c(c).**

The Complaint states a valid cause of action under 15 U.S.C. §1692c(c). That provision of the FDCPA states that "if a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer", subject to certain exceptions not applicable here. Courts throughout the country have affirmed that this plain language means that the failure to stop calling after a valid request violates the statute. *See, e.g., Kerwin v. Remittance Assistance Corp.*, 449 F.Supp.2d 1117, 1123 (D. Nev. 2008) ("RAC's motion indicates that (1) RAC mistakenly called the Kerwins several times, (2) the Kerwins demanded the calls to cease, and (3) the calls did not cease. These acts raise a genuine issue as to whether RAX violated the FDCPA"). Indeed, in a case involving

---

[9] In addition, Plaintiff has answered Defendant's purported Rule 56.1 statement.

Defendant itself, a federal court held that even one contact after a cease and desist letter was sent constitutes a violation of §1692c(c).  *See Bishop v. I.C. System, Inc.*, 713 F.Supp.2d 1361, 1366 (M.D. Fla. 2010).  As that court observed, the "exact number of calls [after the cease and desist letter was mailed] is not material to the §1692c(c) claim."  The allegations of the Complaint here are plain: the cease and desist letter—setting forth that Plaintiff did not owe anything and instructing Defendant to stop harassing Plaintiff-was mailed on November 4, 2011.  Rather than stop its harassment of Plaintiff, Defendant continued making these calls ever after Plaintiff's cease and desist letter.  That plainly establishes liability under §1692c(c).

Defendant's statutory bona fide error defense, which applies on its face only to the §1692c(c) claim, is no help. The FDCPA provides for a "bona fide error" defense, whereby "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). This defense, by its terms, requires defendant to demonstrate by a **preponderance of the evidence** both: (1) that the violation was unintentional; and (2) that it resulted from a bona fide error notwithstanding procedures reasonably adapted to avoid any such error. *See Pipiles v. Credit Bureau of Lockport,* 886 F.2d 22, 25 (2d Cir. 1989). Such a determination is a factual question. *See, e.g., Bank v. Cooper,* No. 08–CV–3936 (JBW), 2009 WL 1491227, at *5 (E.D.N.Y. May 27, 2009) ("Whether the ten dollar overstatement resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error ... is an issue of fact."); *see also DeGeorge v. LTD Fin. Servs., L.P.,* No. 06–CV–178S, 2008 WL 905913, at *5 (W.D.N.Y. Mar. 31, 2008).

First of all, nothing in the Complaint even suggests that Defendant has a bona fide error defense. Because, as noted above, on a motion to dismiss, the court is restricted to looking within the four corners of the complaint, there is absolutely no basis for finding that the Defendant has established a bona fide error defense at this juncture before any discovery has been exchanged.[10]

In any event, even if this Court could consider Defendant's affidavit regarding Defendant's alleged bona fide error defense, that would avail Defendant nothing.  That is because in its affidavit, Defendant admits that there is a built-in one-day lag in Defendant's system between the date the Defendant receives a communication requesting that Defendant cease trying to collect a debt and enters it into Defendant's "ICE-System" and the date that Defendant's Automatic Dialer System stops trying to contact the alleged debtor by telephone. See Affidavit of Ryan Bacon ("Bacon Aff.") in Support of Defendant's Motion to Dismiss ¶¶ 8-9.  That is because Defendant's "ICE-System and [Defendant's] Automatic Dialer System are not interconnected.  Instead they act independently of the other.   Information entered into the ICE-System (such as Plaintiff's dispute of the debt) is transmitted *overnight* to the Automatic Dialer System.  Hence, the dialer system cannot operate on the information received by the ICE-System until the next day."  *Id.* At ¶ 9 (emphasis in the original).

---

[10] The cases upon which Defendant relies for its bona fide error argument, were all in a much more advanced procedural posture than the instant case, and are therefore inapposite on this motion to dismiss.  *See Kort v. Diversified Collection Serv. Inc.*, 394 F.3d 530 (7th Cir. 2005) (certified class action dismissed on summary judgment after earlier motion to dismiss had been denied);  *Hyman v. Tate*, 362 F.3d 965 (7th Cir. 2004) (denying FDCPA claim after bench trial);  *Katz v. Asset Acceptance, LLC*, 2006 WL 348921 (E.D.N.Y. Nov. 30, 2006) (granting summary judgment after plaintiff did not seek discovery and itself refused to respond to discovery requests). Indeed, in the case upon which Defendant most heavily relies, *Puglisi v. Debt Recovery Solutions, LLC*, 822 F.Supp.2d 218 (E.D.N.Y. 2011), which was decided on summary judgment after significant discovery, Judge Bianco noted that he had sustained the Plaintiff's complaint **prior to** discovery—a fact that Defendant somehow neglects to mention in its brief— precisely because the bona fide error defense cannot possibly be adjudicated prior to fact discovery.  *Id.* at 223 n.7.

Defendant contends that this is the reason it called Plaintiff three times on November 23, 2011, after having entered Plaintiff's dispute of the debt.  *Id.*  In other words, Defendant's calls to Plaintiff on November 23, 2011 were not a result of  "a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  *See DeGeorge*, 2008 WL 905913, at *5.  Rather they were the result of Defendant's very procedure that guarantees a one day time lag between receiving the debtor's dispute and the date the Defendant stops calling the alleged debtor in an attempt to collect a debt.

**B.    The Complaint States a Claim under 15 U.S.C. §1692d(5).**

The allegations of the Complaint with respect to violations of §1692d(5)—that is, whether phone calls were made "with intent to annoy, abuse or harass"—state a cause of action under the FDCPA.  Here, the allegations of the Complaint state several independent bases for a §1692d(5) claim.  First, the Complaint alleges that Defendant made *at least* 50 calls to Plaintiff from October  1, 2011 through January 12, 2012.  *See* Compl. ¶ 19.  Indeed, even according to Defendant's own log, *see* Bacon Aff. Ex. 1, Plaintiff called Defendant more than 50 times in 20 days.  That many calls in a short span of time, especially where Plaintiff asked Defendant to stop calling, state a claim as a matter of law.  *See, e.g., Carr v. NCO Fin. Sys., Inc.*, No. 11-2050, 2011 WL 6371899, at *2 (E.D. Pa. Dec. 20, 2011) (refusing to dismiss claim where complaint stated "constant and continuous automatic collections calls" to Plaintiff "once every two, three, four or five days" over a period of 30 days); *Valentine v. Brock & Scott, PLLC*, No. 09-2555, 2010 WL 1727681, at *4 (D.S.C. Apr. 26, 2010) (holding the plaintiff stated a claim for relief under the FDCPA where she alleged the defendant made 11 calls in 19 days); *Brown v. Hosto & Buchan*, *PLLC*, 748 F.Supp.2d 847, 852 (W.D. Tenn. 2010) (holding plaintiff stated claim for relief under the FDCPA where the defendant called her 17 times in a month and used an automatic dialing system"); *Sanchez v. Client Servs., Inc.*, 520 F.Supp.2d 1149, 1161 (N.D.Cal.

24

2007) (granting summary judgment to plaintiff where defendant made six calls in twenty-four minutes); *Akalwadi v. Risk Mgmt.* 336 F.Supp.3d 492, 506 (D.Md. 2004) (finding that the "reasonableness of [26 calls over six months] and their pattern is a question of fact for the jury"). Second, the Complaint alleges that Defendant "hung up either prior to or as soon as Plaintiff, members of Plaintiff's household or Plaintiff's voice mail answered the call." Compl. ¶19. Those facts are more than sufficient to state a claim at this stage under Section 1692d(5). *See* Part IV.B *infra.*

Defendant's arguments to the contrary all fail. Defendant first attempts to avoid the conclusion that the allegations state a claim by asserting that its calls to Plaintiff were unanswered, but again, that is that is contradicted by the allegations of the Complaint which specifically states that calls from Defendant were answered by Plaintiff, a member of Plaintiff's household or Plaintiff's voice mail. Compl. ¶ 19.

The case on which Defendant primarily relies, *Chavious*, 2012 WL 113509 (E.D.N.Y. Jan. 12, 2012) is not to the contrary. There, a district court granted summary judgment to defendants where defendants had made "thirty six calls over approximately two months, all made at reasonable times and not one immediately following another." *Id.* at *2. But the procedural posture in *Chavious* was dramatically different than the facts here. *Chavious* is a summary judgment case, decided after the parties certified that discovery was complete. In this case, the court cannot possibly know whether the call record that Defendant has attached is accurate, how it was gathered, and whether it reflects all calls made to Plaintiff. In addition, the facts in *Chavious* are very different than those of the Complaint here. For one thing, the defendant in *Chavious* was never asked to stop calling. Here, the allegations are that Plaintiff asked Defendant to stop calling on November 4, 2011. Further, it is particularly misleading to say, as Defendant claims in an effort to analogize this case to *Chavious*, that here "the debt collector was

unable to reach anyone on the other end of the telephone." (Br. at 18). To the contrary, the Complaint alleges that Defendant hung up the phone after reaching members of the Plaintiff's household, including Plaintiff himself.

**C.     The Complaint States a Cause of Action under 15 U.S.C. §1692d(6).**

The Complaint also states a cause of action under 15 U.S.C. §1692d(6), which prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity." §1692d(6).     If a call is placed by a debt collection agency, that agency must disclose who it is when the phone is answered. *See Coles v. Lieberman, Michaels &* Kelly, No. 10-CV-484S, 2011 WL 3176467, at *2 (W.D.N.Y. July 27, 2011) ("Finally, Plaintiff alleges that LMK violated §1692d(6) by making more than one telephone call to her telephone without meaningfully disclosing its identity.  Based on the undisputed facts taken as true, this Court finds that LMK violated these sections as alleged"). Hang-ups after a member of the plaintiff's household has picked up the phone are a basis of liability under the FDCPA.  *See, Langdon v. Credit Management, L.P.*, No. C 09-3286, 2010 WL 3341860, at *2 (N.D. Cal. Feb. 24, 2010) (holding in a case where the plaintiff alleged that the Defendant hung up after the Plaintiff picked up the telephone that "common sense dictates that defendant has not provided meaningful disclosure under FDCPA section 1692d(6)").   In this case, as noted above, the Complaint alleges that Defendant called Plaintiff's number, and no disclosure of Defendant's identity was made when "Plaintiff, members of Plaintiff's household or Plaintiff's voice mail" answered the call.  Compl. ¶ 19.  Those facts state a cause of action under the plain language of Section 1692d(6).

Defendant argues in response that the failure to leave voicemail messages, without more, does not amount to a Section 1692d(6) violation. (Br. at 19-20).  Whether or not that is true, those are not the facts here.  Rather, as in *Langdon*, the Complaint here alleges that Plaintiff or someone from Plaintiff's household picked up the phone in response to Defendant's calls, and

26

rather than disclose its identity, Defendant hung-up.  *See Coles,* 2011 WL 3176467 at *2; *Langdon*, 2010 WL 3341860 at *2. Under those circumstances, it is clear that Defendant violated Section 1692d(6). *See, e.g., Edwards v. Niagara Credit Solutions, Inc.*, 586 F.Supp.2d 1346, 1360 (N.D. Ga. 2008) ("Based on a plain reading of the statute, the Court concludes that when a debt collector places a telephone call to a consumer without meaningful disclosure of the identity of the caller, it is not required that the telephone calls *also* be considered harassing, oppressing or abusive to the consumer in order to be in violation of [1692d(6)]").

The cases that Defendant cites for the opposite proposition, including *Chavious*, are neither controlling nor apposite.  At the threshold, those cases improperly read a limitation into Section 1692d(6) that can be found nowhere in the statutory text and therefore are incorrectly decided.  But those cases are also factually inapplicable because each of those cases relates to the question of whether failing to leave a **voicemail** message, **without more**, violates the FDCPA. *See Chavious*, 2011 WL 113509 at * 3 ("The Court agrees with other courts that have considered the FDCPA as a while and concluded that the failure to leave voicemail messages, **without more**, does not amount to a Section 162(d)(6) violation"); *Rucker v. Nationwide Credit, Inc.*, 2011 WL 25300 (E.D. Cal. Jan. 5, 2011) ("Defendant's failure to leave a message . . . does not **by itself** violate . . . §1692d); *Udell v. Kansas Counselors, Inc.*, 313 F.supp.2d 1135, 1144 (D. Kan. 2004) (granting summary judgment against *unopposed* d(6) claim because it was unopposed, and also because in the court's view, d(6) does not establish liability for not leaving a voicemail "when the consumer does not answer the call"); *Fashakin v. Nextel Comm'ns*, No. 05-CV-3080, 2009 WL 790350 (E.D.N.Y. Mar. 25, 2009).   Again, those simply are not the facts here, and are not the allegations of the Complaint. Rather, as is clear from the Complaint, the allegations in this case include claims that Defendant called Plaintiff, Plaintiff or a member of his family picked up the telephone, and Defendant hung up without identifying itself.  Even if the

27

cases Defendant cites properly interpret Section 1692d(6)—and they do not—they do not relate to the facts alleged in this Complaint.  Those allegations, accepted as true as they must be at this stage, establish §1692d(6) liability.

**D. The Complaint States a Cause of Action under 15 U.S.C. §1692e(2)(A)**

Section 1692e(2)(A) of the FDCPA prohibits false representations concerning the "character, amount or legal status of any debt."  That includes even an unintentional misrepresentation of an amount of debt.  *See Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995 (7th Cir. 1995) ("In short, by asserting Turner owed a debt that no longer existed, on its face the letter was false"; rejecting claim that failure to know debt no longer existed was unintentional); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) ("Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages").  The Complaint here alleges that Plaintiff did not owe any debt.  However, Defendant represented that there was indeed a debt.  That misrepresentation—whether intentional or not—violates the FDCPA.

**E. The Complaint States a Cause of Action under 15 U.S.C. §1692e(10-11).**

15 U.S.C. 1692e(10) provides that "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer" is a specific example of a "false, deceptive or misleading representation or means" in connection with the collection of any debt.  15 U.S.C. 1692e(11) similarly provides that the failure to disclose that the debt collector is attempting to collect a debt is a violation of 1692e.

Courts have held that the "factual allegation that defendant calls plaintiff and hangs up [after plaintiff has answered the call]. . . provides sufficient factual support" for plaintiff's claims under sections 1692e(10-11)).  *See Langdon*, 2010 WL 3341860 at *3.  *See also Hicks v. America's Recovery Solutions*, 816 F.Supp.2d 509, 513 (N.D. Ohio 2011) (recognizing the

holding of *Langdon* that there would be 1692e(10-11) liability if the Defendant had hung up after the debt collection call had been answered.).   That makes sense because the core of the identification requirement is that the debt collector identify itself as such once the call is answered.   The allegations here under Sections 1692e(10) and 1692e(11) are clear.   Defendant's failure to leave voicemails or identify itself when Defendant's debt collection calls were answered by Plaintiff or a person from Plaintiff's household violated the FDCPA.

**F. The Complaint States a Cause of Action under 15 U.S.C. §§1692f.**

15 U.S.C. § 1692f  prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect a debt."  *See McMillan v. Collection Professional, Inc.*, 455 F.3d 754, 765 (7th Cir. 2006) (stating, on a motion to dismiss, that "we cannot say that Ms. McMillan will not be able to produce evidence to show that an unsophisticated consumer would view the collection letter, calling into question Ms. McMillan's honesty and good intentions, to be unfair or unconscionable"); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004) (holding that a plaintiff stated a claim under 1692f sufficient to survive a motion to dismiss when the letter at issue "could conceivably mislead an unsophisticated consumer.").   Defendant's continuing to call Plaintiff after being told to stop, its failure to adequately disclose its identity when Plaintiff or members of the Plaintiff's household answered the phone and its efforts to collect a debt that was not due all constitute a violation of Section 1692f.  *See, e.g,. Freeman v. ABC Legal Servs.*, 827 F.Supp.2d 1065 (N.D. Cal. 2011) (finding that so-called "sewer service" allegation—i.e., allegations of fraudulent service—stated a claim under Section 1692d, 1692e and 1692f); *Duffy v. Landberg*, 215 F.3d 871, 873-75 (8th Cir. 2000) (finding that an *attempt* to recover more debt than was due violated Section 1692f(1)); *Riley v. Giguiere*, 631 F.Supp.2d 1295, 1309 (E.D. Cal. 2009) (finding same allegations could raise issues of fact with respect to Sections 1692e and 1692f).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's complaint and/or for summary judgment should be denied.

Dated: White Plains, New York
      June 12, 2012

Respectfully submitted,

**BELLIN & ASSOCIATES LLC**
**A New York Limited Liability Company**


By:   /s/ Aytan Y. Bellin
      Aytan Y. Bellin, Esq.
      85 Miles Avenue
      White Plains, New York 10606
      (914) 358-5345
      (212) 571-0284 (fax)

      and-

**SCHLAM STONE & DOLAN LLP**
Jeffrey M. Eilender, Esq.
Raffi Melkonian, Esq.
26 Broadway
New York, NY 10004
(212) 344-5400
(212) 344-7677 (fax)

*Attorneys for Plaintiff*
*David Sussman and the Proposed Classes*

30